******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## STATE OF CONNECTICUT *v.* ANTHONY SMALL
## (AC 43660)

Bright, C. J., and Cradle and Bishop, Js.

*Syllabus*

The defendant, who had been convicted of several crimes, including capital felony, appealed to this court, claiming that the trial court erred in denying his request for the appointment of counsel to represent him on a motion to correct an illegal sentence that he had filed, as required by *State* v. *Francis* (322 Conn. 247). After the self-represented defendant filed his motion, it was reviewed by B, a public defender, who thereafter filed a report with the trial court, stating that no sound basis existed for the filing of the motion. B further stated in his report that he had notified the defendant by letter of the reasons for that conclusion and that the Office of the Public Defender would not represent him in the hearing on the motion. The trial court thereafter rejected the defendant's assertion that, as an indigent defendant, he was required to have counsel pursuant to *Francis* and denied the motion to correct. On appeal, the defendant claimed that his right to counsel was violated because, contrary to the requirement of *Francis*, B did not consult with him regarding the motion to correct or inform him or the court of the reasons underlying his conclusion that no sound basis existed for the motion. *Held* that the trial court's denial of the defendant's motion to correct an illegal sentence was reversed and the case was remanded to that court with direction to appoint counsel to represent the defendant to determine, in accordance with *Francis*, whether a sound basis exists for that motion; because B failed to inform the trial court of his reasons for concluding that no sound basis existed for the motion, the court was not able to fulfill its obligation under *Francis* to consider B's reasoning, and, if persuaded by that reasoning, to permit B to withdraw as counsel for the defendant, as B's one paragraph report simply stated that he reviewed the motion, determined that no sound basis existed for it and informed the defendant by letter of the reasons for his conclusion; moreover, although the defendant claimed that B was required to inform him in a brief of the reasons for his conclusion, *Francis* does not require counsel to file a brief but requires only that counsel inform the defendant orally or in writing as to the reasons for his conclusion, and this court had no reason to doubt B's candor that he so informed the defendant in that letter.

Argued May 11—officially released September 7, 2021

*Procedural History*

Substitute information charging the defendant with one count of the crime of capital felony, two counts of the crime of felony murder and one count each of the crimes of kidnapping in the second degree and conspiracy to commit robbery in the first degree, brought to the Superior Court in the judicial district of Fairfield and tried to the jury before *Ford, J.*; verdict and judgment of guilty of one count of capital felony, two counts of felony murder and one count of conspiracy to commit robbery in the first degree, from which the defendant appealed to the Supreme Court, which reversed the trial court's judgment in part and remanded the case to that court for further proceedings; thereafter, the court, *Ford, J.*, resentenced the defendant; subsequently, the court, *Devlin, J.*, denied the defendant's motion to correct an illegal sentence, and the defendant appealed to this court. *Appeal dismissed in part*;

*reversed; further proceedings.*

*Anthony Small*, self-represented, the appellant (defendant).

*Michele C. Lukban*, senior assistant state's attorney, with whom, on the brief, were *Joseph T. Corradino*, state's attorney, and *C. Robert Satti, Jr.*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

CRADLE, J. The defendant, Anthony Small, appeals from the judgment of the trial court denying his motion to correct an illegal sentence. On appeal, the defendant claims that the court erred in failing to follow the procedures set forth by our Supreme Court in *State* v. *Francis*, 322 Conn. 247, 140 A.3d 927 (2016), when it denied his request for the appointment of counsel on his motion to correct an illegal sentence. We agree and, accordingly, reverse the judgment of the trial court.[1]

The following undisputed facts and procedural history are relevant to this appeal.

In 1995, following a jury trial, the petitioner was convicted of one count of capital felony in violation of General Statutes (Rev. to 1989) § 53a-54b (8), two counts of felony murder in violation of General Statutes § 53a-54c, and one count of conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 and 53a-134 (a) (2). On appeal, our Supreme Court vacated the petitioner's conviction of capital felony and instructed the trial court to resentence the petitioner. *State* v. *Small*, 242 Conn. 93, 116, 700 A.2d 617 (1997). The trial court, *Ford, J.*, thereafter imposed a total effective sentence of forty-five years of incarceration.

On June 7, 2018, the defendant, representing himself, filed a motion to correct an illegal sentence. The defendant claimed that his sentence was illegal because it was based on inaccurate information. Specifically, the defendant argued that the sentencing court based his sentence on its erroneous belief that he was parole eligible. He contended that the sentencing court's "intent at sentencing was for the defendant to be released and developing in society."

On November 16, 2018, Attorney Joseph G. Bruckmann, public defender for the judicial district of Fairfield at Bridgeport, filed with the court a document entitled, "Report re: Defendant's Motion to Correct an Illegal Sentence." The report, which consisted of a single paragraph, stated: "Pursuant to *State* v. *Francis*, [supra], 322 Conn. 247, the undersigned has reviewed the defendant's motion to correct an illegal sentence filed on June 7, 2018, and has determined that no sound basis exists for the filing of that motion or the appeal of the trial court's denial of that motion. The undersigned has notified the defendant by mail of the reasons for that conclusion and has informed the defendant that the Office of the Public Defender will not be representing him in the hearing on this motion."

On December 5, 2018, the defendant appeared before the court, *Devlin, J.*, by videoconference, on his motion to correct. The court explained to the defendant: "[O]ur practice here in Bridgeport is that, when an inmate files a motion to correct [an] illegal sentence, the public

defender . . . reviews it to see whether or not their office is going to . . . have a lawyer appointed to represent the inmate on the motion. . . . [The public defender] has filed a document with the clerk's office indicating that they've reviewed your motion, and they decided not to have a lawyer represent you. And they indicated [that] they sent you a letter basically summarizing that. So . . . that . . . doesn't mean that your motion is denied, but it means that you have to handle it on your own."

The court then asked the defendant if he had received the letter from Bruckmann regarding his motion.[2] The defendant responded that he "got an unexpected letter" that "express[ed] that [the public defender's] office wouldn't be representing [him]." The defendant further explained to the court: "But I didn't . . . get any *Anders*[3] brief or anything expressing the reasons why. It was just, like, an informal letter."[4] (Footnote added.) The defendant told the court that he would like Bruckmann to file an *Anders* brief. The court told the defendant: "That's not our practice in Connecticut." The court explained: "The practice in Connecticut right now is for the public defender to determine whether, in their professional judgment, the motion [to correct] has merit. And if [they] think it has merit, then it should go forward and they should have a lawyer represent the inmate. If it does not have merit, then they're not required to file an appearance. Under our current practice, they're not required to file an *Anders* brief. [You] can disagree with that, but that's my understanding of the law now, that they are not required to file an *Anders* brief."

Finally, the court summarized: "[O]ur practice is that [Attorney] Bruckmann reviews these claims. If he thinks they have merit, a lawyer represents the person. If he doesn't think the claim has merit, and remember, this is a motion to correct [an] illegal sentence. It's a narrow . . . number of grounds that can support it. If it doesn't have merit, they don't have a lawyer represent the person, and then the person has to handle the case on their own, which you really are in your case."

The court then asked the defendant if he was prepared to proceed on his motion to correct at that time, or if he wanted to continue the matter to another date to afford him further opportunity to prepare. The defendant told the court that he was not prepared to argue on that date, and that he had several exhibits that he wanted to introduce into evidence in support of his motion. After the court set a new date for the hearing on the defendant's motion to correct, the defendant asked to address "the record concerning the *Anders* brief," and stated that he objected "to not being able to have an *Anders* brief." The court assured the defendant that his objection was noted for the record.

On January 23, 2019, the court held a hearing on the

defendant's motion to correct. The defendant appeared as a self-represented party. At the conclusion of that hearing, the court, *Devlin, J.*, advised the parties that he was going to read the materials submitted, and that he would bring the defendant back to court on February 20, 2019, when he would issue his ruling on the defendant's motion to correct. The defendant then told the court that he had one more issue that he would like to address. The defendant argued: "As an indigent defendant, I was required to have counsel. The last time [that I was in court] . . . I had a videoconference, and I couldn't see who the judge was. . . . Under *Francis* the exact same situation happened that's happened to me. In *Francis*, no lawyer was appointed, a neutral agent of the court went and got my claim without sitting down face-to-face and discussing what my claim would be, wrote me a letter that I thought was attorney-client privilege, hand it to the judge, said he don't think the claim has merit. He didn't file an *Anders* brief so I could respond and file an *Anders* brief and tell you that I do have merit . . . ." The court interjected, stating that "*Francis* is not our practice right now in Connecticut." The defendant continued to "object," and the court repeated, "*Francis* doesn't apply in Connecticut right now. . . . *Francis* has been overruled."

On February 20, 2019, the court, *Devlin, J.*, issued its ruling orally from the bench, finding that the sentencing court did not materially rely on inaccurate information when it imposed the defendant's sentence. The court therefore concluded that the defendant's sentence was not illegal and, accordingly, denied the defendant's motion to correct. This appeal followed.

On appeal, the defendant argues that the court erred in failing to follow the procedures set forth by our Supreme Court in *State* v. *Francis*, supra, 322 Conn. 247, when it denied his request for the appointment of counsel to represent him on his motion to correct. We agree.

Our analysis is guided by the following legal principles. "[I]t is axiomatic that [t]he judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner . . . . A motion to correct an illegal sentence constitutes a narrow exception to the general rule that, once a defendant's sentence has begun, the authority of the sentencing court to modify that sentence terminates. . . . Indeed, [i]n order for the court to have jurisdiction over a motion to correct an illegal sentence after the sentence has been executed, the sentencing proceeding [itself] . . . must be the subject of the attack. . . . Therefore, the motion is directed to the sentencing court, which can entertain and resolve the challenge most expediently." (Citation omitted; internal quotation marks omitted.) *State* v. *Francis*, supra, 322 Conn. 259–60.

Our Supreme Court first addressed the right to counsel on a motion to correct an illegal sentence in *State v. Casiano*, 282 Conn. 614, 619, 922 A.2d 1065 (2007). In *Casiano*, our Supreme Court analyzed whether the term "any criminal action" in General Statutes § 51-296 (a)[5] encompassed a motion to correct an illegal sentence and, thus, whether the appointment of counsel was required for indigent defendants with respect to such motions. Our Supreme Court held that, in connection with a motion to correct an illegal sentence filed pursuant to Practice Book § 43-22, "a defendant has a right to the appointment of counsel for the purpose of determining whether a defendant who wishes to file such a motion has a sound basis for doing so. If appointed counsel determines that such a basis exists, the defendant also has the right to the assistance of such counsel for the purpose of preparing and filing such a motion and, thereafter, for the purpose of any direct appeal from the denial of that motion." Id., 627–28.

Subsequently, in *State v. Francis*, supra, 322 Conn. 259,[6] our Supreme Court concluded that it was harmful error for a trial court to fail to appoint counsel to represent the defendant "even for the limited purpose of determining whether a sound basis existed for him to file his motion [to correct an illegal sentence]." In that case, the trial court did not appoint a public defender for the purposes of sound basis review after the defendant had filed his third motion to correct an illegal sentence. Id., 252, 268. Instead, the court clerk's office alerted the public defender, who reviewed the motion and reported to the court that it was his opinion that the defendant's motion " 'does not have sufficient merit . . . .' " Id., 253. The public defender did not " '[describe] in detail to the court the substance of any discussions with the defendant about the claims he wished to make in his motion' "; id., 268; nor did he " 'explain his findings to the defendant . . . .' " Id., 269. The defendant objected and requested that the public defender state the specific grounds and reasoning on which he had formed his conclusion. Id., 255. The trial court denied the request and subsequently denied the defendant's motion. Id., 255–56.

Thereafter, the defendant appealed to this court, claiming, among other things, that the trial court had violated his right to counsel under § 51-296 (a) by denying his request for counsel without adhering to the procedure set forth in *Anders v. California*, 386 U.S. 738, 744, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967). See *State v. Francis*, 148 Conn. App. 565, 575, 86 A.3d 1059 (2014), rev'd, 322 Conn. 247, 140 A.3d 927 (2016). This court agreed with the defendant that the trial court should have followed *Anders* in denying his request for appointed counsel. Id., 569. This court reasoned that, "because the express rationale in *Casiano* for extending

the statutory right to counsel . . . from appeals to motions to correct is that such motions are functionally equivalent to appeals as vehicles for challenging the legality of criminal sentences, [a criminal defendant's] right to appointed counsel on a motion to correct must be identical to, and thus be protected by, the same procedural safeguards [that are] used to protect [the] right to appointed counsel on appeal." Id., 584.

Our Supreme Court disagreed and concluded that "the *Anders* procedure is not strictly required to safeguard the defendant's statutory right to counsel in the context of a motion to correct an illegal sentence." *State* v. *Francis*, supra, 322 Conn. 251.

In so concluding, our Supreme Court adhered to its holding in *Casiano* that an indigent defendant has the right to the appointment of counsel for the purpose of determining whether a sound basis exists for the filing of a motion to correct an illegal sentence but distinguished a proceeding on a motion to correct an illegal sentence from that in a direct appeal. Id., 267. The court in *Francis* explained that a proceeding on a "postconviction motion to correct . . . bears no resemblance to a direct appeal in terms of the number and complexity of issues that may be raised, [and that] fact . . . necessarily bears on the question of whether the same procedures are required to protect the right to effective assistance of counsel in both situations." Id., 263. The court reasoned: "In stark contrast [to direct appeals], the claims that may be raised in a motion to correct an illegal sentence are strictly limited to improprieties that may have occurred at the sentencing stage of the proceeding." Id., 264. The court concluded: "In light of the limited and straightforward nature of the claims that may be raised in a motion to correct, the potential merits of such a motion will be apparent to the court and appointed counsel from a simple review of the sentencing record. . . . Accordingly, we can perceive no reason why appointed counsel, having carefully reviewed the record for possible sentencing errors in light of governing legal principles and determined that none exist, must then be required to file an *Anders* brief identifying anything in the record that might arguably support a countervailing view, or why the trial court should then be required to undertake a full and independent review of the record to determine whether it agrees with defense counsel's assessment of the defendant's claimed sentencing error." (Citations omitted.) Id., 265–66.

With those precepts in mind, our Supreme Court in *Francis* outlined the following procedure to be used when a motion to correct an illegal sentence is filed: "[W]hen an indigent defendant requests that counsel be appointed to represent him in connection with the filing of a motion to correct an illegal sentence, the trial court must grant that request for the purpose of

determining whether a sound basis exists for the motion. . . . If, *after consulting with the defendant* and examining the record and relevant law, counsel determines that no sound basis exists for the defendant to file such a motion, he or she *must inform the court and the defendant of the reasons for that conclusion,* which can be done either in writing or orally. If the court is persuaded by counsel's reasoning, it should permit counsel to withdraw and advise the defendant of the option of proceeding as a self-represented party." (Citation omitted; emphasis added; footnote omitted.) Id., 267–68. Thus, although the procedure to be undertaken by appointed counsel and the court on a motion to correct requires less scrutiny than that required on a direct appeal, the court in *Francis* maintained certain safeguards to ensure that the sound basis review and determination would not be unilateral by either appointed counsel or the court. With these principles in mind, we turn to the defendant's claims on appeal.

The defendant first argues that his right to counsel was violated because, contrary to the requirement of *Francis*, Bruckmann did not consult with him regarding his motion to correct. The defendant is correct in his contention that such a consultation by appointed counsel is required. The defendant alleged on the record to Judge Devlin that Bruckmann did not consult him regarding his motion, and Bruckmann was not present to refute the defendant's allegation. In fact, we do not find any support in the record that there was ever a consultation between Bruckmann and the defendant.

The defendant also claims that Bruckmann neither informed him nor the court of the reasons underlying his conclusion that no sound basis existed for his motion. Again, the defendant correctly asserts that *Francis* required Bruckmann to do so. In the "Report re: Defendant's Motion to Correct an Illegal Sentence" that Bruckmann filed with the court, he represented that he had notified the defendant by mail of the reasons for his conclusion that no sound basis existed for the motion to correct. The defendant acknowledged that he received a letter from Bruckmann but asserted that the letter was informal and that Bruckmann was required to inform him in a brief of the reasons for his conclusion that no sound basis existed for his motion to correct. *Francis* does not require counsel to file a brief but requires only that counsel inform the defendant orally or in writing. The defendant does not contend that the letter he received from Bruckmann did not set forth the reasons for his conclusion, and we have no reason to doubt Bruckmann's candor in his statement that he so informed the defendant in that letter.

Bruckmann did, however, fail to inform the court of the basis for his conclusion that no sound basis existed for the defendant's motion to correct. Bruckmann's report simply stated that he had reviewed the defen-

dant's motion, that he had determined that no sound basis existed for that motion, and that he had informed the defendant of the reasons for his conclusion. Bruckmann did not set forth the reasons for his conclusion. Although, contrary to the defendant's argument, the court was not required, under *Francis*, to conduct its own independent evaluation of the potential merits of the defendant's motion, it was required to consider the reasoning for Bruckmann's conclusion that no sound basis existed for the defendant's motion, and, if persuaded by that reasoning, permit Bruckmann to withdraw as counsel to the defendant. Because the court was not made aware of that reasoning, either orally or in writing, it was not able to fulfill its obligation to consider it, as required by *Francis*.

The appeal is dismissed with respect to the defendant's claim that he was denied appellate counsel, the judgment is reversed and the case is remanded with direction to appoint counsel to represent the defendant to determine, in accordance with the procedures set forth in *State* v. *Francis*, supra, 322 Conn. 247, whether a sound basis exists for his motion to correct an illegal sentence.

In this opinion the other judges concurred.

[1] The defendant also challenges the judgment of the trial court denying his motion to correct on its merits, arguing that the court improperly concluded that the sentencing court had not relied on inaccurate information in imposing his sentence. Because we conclude that the court erred in failing to appoint counsel, we do not reach the defendant's challenge to the substance of the trial court's denial of his motion to correct.

The defendant also appeals from the denial of appellate counsel. We dismiss this portion of his appeal. See *State* v. *Jimenez*, 127 Conn. App. 706, 710, 14 A.3d 1083 (2011) ("Practice Book § 63-7 provides in relevant part that [t]he sole remedy of any defendant desiring the court to review an order concerning . . . the appointment of counsel shall be by motion for review under [Practice Book §] 66-6. The defendant did not file a motion for review of the court's denial of his application for the appointment of appellate counsel but has sought review of the ruling for the first time in this appeal. The defendant has not availed himself of his sole remedy and is unable to seek review in the present appeal. Accordingly, we dismiss that portion of the appeal concerning his claim that the court improperly denied his application for the appointment of appellate counsel." (Internal quotation marks omitted.)).

[2] The record does not reflect that Bruckmann was present during any of the proceedings mentioned herein.

[3] "In *Anders* [v. *California*, 386 U.S. 738, 744, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967)], the United States Supreme Court outlined a procedure that is constitutionally required when, on direct appeal, appointed counsel concludes that an indigent defendant's case is wholly frivolous and wishes to withdraw from representation. . . . Under *Anders*, before appointed counsel may withdraw, he or she must provide the court and the defendant with a brief outlining anything in the record that may support the appeal, and the defendant must be given time to raise any additional relevant points. . . . Thereafter, the court, having conducted its own independent review of the entire record of the case, may allow counsel to withdraw, if it agrees with counsel's conclusion that the appeal is entirely without merit." (Citations omitted.) *State* v. *Francis*, supra, 322 Conn. 250 n.3.

[4] The letter sent by Bruckmann to the defendant was not submitted to the trial court. The first page of that letter, however, is included in the appendix to the defendant's brief to this court. The first page of that letter explains the procedure by which the defendant's motion was referred to the public defender's office, in addition to the legal principles applicable to motions to correct. The record does not reflect how many pages comprised that letter, or the specific content of it, other than Bruckmann's representa-

tion in the report that he filed with the court that he had "notified the defendant by mail" of his reasons for concluding that no sound basis existed for the defendant's motion to correct.

[5] General Statutes § 51-296 (a) provides in relevant part: "In any criminal action, in any habeas corpus proceeding arising from a criminal matter, in any extradition proceeding, or in any delinquency matter, the court before which the matter is pending shall, if it determines after investigation by the public defender or his office that a defendant is indigent as defined under . . . chapter [887], designate a public defender, assistant public defender or deputy assistant public defender to represent such indigent defendant, unless, in a misdemeanor case, at the time of the application for appointment of counsel, the court decides to dispose of the pending charge without subjecting the defendant to a sentence involving immediate incarceration or a suspended sentence of incarceration with a period of probation or the court believes that the disposition of the pending case at a later date will not result in a sentence involving immediate incarceration or a suspended sentence of incarceration with a period of probation and makes a statement to that effect on the record. If it appears to the court at a later date that, if convicted, the sentence of an indigent defendant for whom counsel has not been appointed will involve immediate incarceration or a suspended sentence of incarceration with a period of probation, counsel shall be appointed prior to trial or the entry of a plea of guilty or nolo contendere."

[6] *State* v. *Francis*, supra, 322 Conn. 247, has not been overruled.

———————————————————