******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# DANIEL W. E. *v.* COMMISSIONER OF CORRECTION*
## (AC 46617)

Seeley, Westbrook and Wilson, Js.

### *Syllabus*

The petitioner, who had previously been convicted of sexual assault and risk of injury to a child, appealed after the habeas court denied his petition for certification to appeal from its judgment denying his petition for a writ of habeas corpus. He claimed, inter alia, that the court improperly construed the allegations in his petition for a writ of habeas corpus, resulting in a deprivation of his right to due process. *Held*:

The habeas court did not abuse its discretion in denying the petitioner certification to appeal, as he failed to demonstrate that his underlying claim of error was debatable among jurists of reason, that a court could resolve the issues in a different manner or that the question was adequate to deserve encouragement to proceed further, and, accordingly, this court concluded that the petitioner failed to invoke this court's jurisdiction, and the appeal was dismissed.

The habeas court properly denied the petition for a writ of habeas corpus, as, despite the petitioner's claim to the contrary, the court properly construed the allegations of the petition to the petitioner's benefit, in light of the petitioner's legal burden and the specific relief sought by him, and, even if the petitioner could demonstrate that the court erred in its interpretation of the allegations in the petition, the petitioner failed to demonstrate that it resulted in a specific due process violation as was alleged.

Argued March 17—officially released September 16, 2025

### *Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Newson, J.*; judgment denying the petition; thereafter, the court, *Newson, J.*, denied the petition for certification to appeal, and the petitioner appealed to this court. *Appeal dismissed.*

---

* In accordance with our policy of protecting the privacy interests of the victims of sexual assault and the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

*Cheryl A. Juniewic*, assigned counsel, for the appellant (petitioner).

*Alexander A. Kambanis*, deputy assistant state's attorney, with whom, on the brief, were *Anne Mahoney*, state's attorney, and *Donna Fusco*, assistant state's attorney, for the appellee (respondent).

*Opinion*

WILSON, J. The petitioner, Daniel W. E., appeals following the denial of his petition for certification to appeal from the judgment of the habeas court denying his amended petition for a writ of habeas corpus. The petitioner claims that the court (1) abused its discretion in denying his petition for certification to appeal and (2) improperly construed the allegations in his amended petition for a writ of habeas corpus, resulting in a deprivation of his right to due process. We conclude that the habeas court properly denied the petition for certification to appeal and, therefore, dismiss this appeal.

The following procedural history is relevant to the claims raised on appeal. On September 27, 2012, following a jury trial, the petitioner was convicted of two counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2) and one count of risk of injury to a child in violation of General Statutes (Rev. to 2001) § 53-21 (a) (2). The conviction was based on evidence that the petitioner sexually assaulted the victim, his daughter, when she was between six and nine years of age. On November 26, 2012, the court, *Boland, J.*, imposed a total effective sentence of twenty-five years, followed by fifteen years of special parole. At the petitioner's criminal trial, he was represented by Attorney Mark Hauslaib.

Following his conviction, the petitioner brought a direct appeal to this court. Our Supreme Court transferred the appeal to itself pursuant to General Statutes

§ 51-199 (c) and Practice Book § 65-2. Thereafter, our Supreme Court affirmed the judgment of conviction. See *State* v. *Daniel W. E.*, 322 Conn. 593, 142 A.3d 265 (2016), overruled by *State* v. *Adam P.*, 351 Conn. 213, 330 A.3d 73 (2025). In that appeal, our Supreme Court rejected the petitioner's claim that the trial court had improperly instructed the jury on the use of constancy of accusation testimony.[1] Id., 616. In connection with his direct appeal, the petitioner was represented by Attorney Glen W. Falk.

While the petitioner's direct appeal was pending, he brought a habeas action challenging his conviction (prior habeas action). The amended petition filed in the prior habeas action set forth a single claim of ineffective assistance of trial counsel, which was based on various alleged deficiencies. On April 26, 2018, following a trial, the court, *Kwak*, *J.*, denied the petition. In connection with the prior habeas action, the petitioner was represented by Attorney James E. Mortimer. Thereafter, this court affirmed the judgment of the habeas court. *Daniel W. E.* v. *Commissioner of Correction*, 193 Conn. App. 905, 217 A.3d 59 (2019), cert. denied, 334 Conn. 926, 224 A.3d 904 (2020).

Subsequently, the petitioner brought the present habeas action. In count one of his August 17, 2020 amended petition, the petitioner alleged that he was denied his right to the effective assistance of appellate counsel, Attorney Falk. The petitioner alleged that Attorney Falk's representation fell below the standard of care

---

[1] We note that in *Daniel W. E.* our Supreme Court modified the constancy of accusation doctrine by requiring trial courts to instruct juries in sexual offense cases in which defendants had not challenged the complainants' credibility based on delayed reporting, that they could not consider a complainant's delay in reporting a sexual offense in evaluating a victim's credibility. *State* v. *Daniel W. E.*, supra, 322 Conn. 629–30. The court subsequently overruled *Daniel W. E.* and abandoned the modified approach to constancy evidence. See *State* v. *Adam P.*, 351 Conn. 213, 330 A.3d 73 (2025).

for appellate counsel and that, but for Attorney Falk's ineffective and deficient performance, there is a reasonable probability that his conviction, in whole or in part, would have been reversed on appeal.

In count two of his amended petition, the petitioner alleged that he was denied his right to the effective assistance of prior habeas counsel, Attorney Mortimer. The petitioner alleged that, in his prior habeas action, Attorney Mortimer failed "to investigate and locate a trial witness who allegedly recanted her statements made to law enforcement officials" concerning his criminal conduct, failed "to consult and retain a medical expert to independently assess the victim's injuries," and failed "to question Dr. David Mantell about whether the quality of [State] Trooper Eric Trotter's interview of the victim fell below the standard of care under recently promulgated guidelines for obtaining statements from children."[2] The petitioner alleged that Attorney Mortimer's representation fell below the standard of care for habeas counsel and that, but for his ineffective assistance, there is a reasonable probability that the court would have granted his petition for a writ of habeas corpus in the prior habeas action.

In the present habeas action, the petitioner requested that the habeas court vacate the judgment of conviction;

[2] The record reflects that, at the prior habeas trial, the petitioner presented testimony from Mantell. Mantell is a clinical psychologist who specializes in forensic psychology and "particularly in child abuse and neglect issues." In preparation for his testimony, Mantell reviewed a variety of documents related to the victim, including records from the Department of Children and Families, records of police interviews, investigation records, handwritten witness statements and court records of testimony. At the prior habeas trial, Mantell rendered an expert opinion about the merits of an interview of the victim that was conducted by Trotter when the victim and her mother arrived at the police station to file a complaint concerning the petitioner. At the petitioner's criminal trial, the state introduced evidence that Trotter had interviewed the victim and that the statements that she made during this interview led to the petitioner's arrest.

return the matter to the trial court docket; direct the respondent, the Commissioner of Correction, to release him from confinement; and order whatever other relief that law and justice required. With respect to the substantive allegations of deficient performance and prejudice, the respondent left the petitioner to his proof.

On February 27 and March 13, 2023, the habeas court, *Newson*, *J.*, held a trial on the petition. On April 12, 2023, the court issued a memorandum of decision in which it rendered judgment denying the petition. With respect to the allegations in count one concerning appellate counsel, the court concluded that the petitioner failed to satisfy his burden of proving ineffective assistance of appellate counsel.[3]

The habeas court then addressed the allegations in count two that the petitioner was deprived of the effective assistance of habeas counsel in the prior habeas action. After setting forth the applicable principles of law, the court stated: "As to the claims that Attorney Mortimer failed [to] investigate and call a witness who allegedly recanted their statement and that he failed to question Dr. Mantell about the quality of the trooper's interview of the victim, they . . . fail as a matter of law. . . . Neither the unnamed witness [nor] Dr. Mantell was called as a witness at the habeas trial, which prevents the court from assessing the information either of them allegedly had to offer or the potential impact of that information on the outcome of the trial. . . . As such, there is no need for further analysis of those claims. . . .

"Additionally, although Attorney Mortimer was asked 'glancing' questions about his memory or the testimony the trooper provided at the prior habeas trial about

---

[3] Because the court's resolution of count one is not a subject of this appeal, it is unnecessary for us to discuss the analysis of count one in any greater detail.

his interview of the victim, there was no substantive attempt to address why Attorney Mortimer handled the trooper's testimony the way he did or to substantively address what, if any, other ways the petitioner alleges he should have attacked that testimony. In other words, the petitioner offered no affirmative evidence that made Attorney Mortimer's decisions in addressing the testimony of Dr. Mantell and the trooper, under the circumstances presented to him at that time and based on the information he possessed, objectively unreasonable. . . . Attorney Mortimer was not questioned at all about the unnamed recantation witness. Therefore, even if those claims did not fail as a matter of law for failure to call the witnesses in question to the stand, they would fail because the petitioner did not offer any substantive evidence addressing Attorney Mortimer's performance with regard to these claims. . . .

"Another reason all of the claims above would fail as a matter of law is because there was no evidence presented directly regarding the performance of Attorney Hauslaib, criminal trial counsel, regarding these matters. Attorney Hauslaib also did not testify at the habeas trial. As stated [previously], to be successful in a claim of ineffective assistance against first habeas counsel would require the petitioner to prove deficient performance *and* prejudice against first habeas counsel *and* criminal trial counsel. . . . Without directly questioning Attorney Hauslaib about what he knew, when he knew those things, and why he made particular decisions during the course of his representation, the petitioner cannot meet his burden of overcoming the presumption that all of Attorney Hauslaib's decisions fell within the wide range of professionally reasonable decisions under the circumstances. . . .

"The petitioner's final claim is that Attorney Mortimer failed to consult with and obtain his own expert to independently assess the victim's injuries. By way of

additional information, Dr. Erica Kesselman testified at the petitioner's criminal trial as an expert in sexual assault examinations and was also part of the Windham County child sexual assault multidisciplinary team. She was asked to perform a sexual assault examination on the victim by the Department of Children and Families during the course of the investigation. . . . In the end, based on all of the information available, Dr. Kesselman reached a conclusion that her findings . . . were 'indeterminate' on the issue of whether the victim had suffered sexual trauma. She also testified that she did not, and would not expect to, find any physical evidence of injury with regard to the reports of anal penetration. It was the petitioner's contention that Attorney Mortimer should have offered his own expert to testify as to these critical issues.

"The petitioner did present the testimony of Dr. Stephen Guertin, an expert in pediatric care and child sexual assault investigations. The testimony Dr. Guertin presented, however, was not overly compelling nor did it actually contradict Dr. Kesselman's ultimate opinion that the physical findings were 'indeterminate.' Also, Dr. Guertin's testimony, despite the fact that he is an expert witness, must be viewed through the lens that he has never actually spoken to the victim, never examined, and never even saw photographs or other medical imaging of the structures Dr. Kesselman physically examined. In other words, Dr. Guertin's entire opinion was based on his review of Dr. Kesselman's written report and the transcripts of her testimony. Notwithstanding, his only real dispute was he claimed there are studies that indicate that the type of injuries seen on the victim's hymen *could be* associated with her current sexual activity . . . [and] that such information should have [been] provided within Dr. Kesselman's testimony. Other than that, he agreed that Dr. Kesselman's examination of the victim appeared to have

followed proper protocols and that her ultimate conclusion that the findings were 'indeterminate' was the proper conclusion called for based on all of the information.

"Given [that] Dr. Guertin's expert opinion ultimately agrees with the opinion provided by Dr. Kesselman, there is no reasonable likelihood that presenting his testimony at the prior habeas, or the criminal trial would have resulted in a more favorable outcome for the petitioner. Therefore, the petitioner has failed to meet his burden of showing that he was prejudiced . . . and it is not necessary for the court to analyze habeas or trial counsel's performance." (Citations omitted; emphasis in original; footnotes omitted; internal quotation marks omitted.)

Following the habeas court's denial of the amended petition for a writ of habeas corpus, the petitioner filed a petition for certification to appeal. In the petition, he set forth the following ground: "The habeas . . . court erred in denying the petitioner's ineffective assistance of counsel claim because trial counsel did not call a medical expert at trial." The court denied the petition. This appeal followed.[4] Additional facts will be set forth as necessary.

I

We first address the petitioner's claim that the court abused its discretion in denying his petition for certification to appeal. We are not persuaded.

---

[4] As stated previously in this opinion, the petitioner's claims in this appeal do not concern the habeas court's resolution of count one of his amended petition for a writ of habeas corpus. In challenging the court's resolution of count two of the amended petition, however, the petitioner relies on the alleged constitutional violation that we discuss in greater detail in part II of this opinion. Beyond arguing in connection with that claim that the court misinterpreted count two of his amended petition, the petitioner does not challenge the reasons on which the court relied in denying him relief in connection with count two. Accordingly, we do not review the court's substantive analysis of that claim.

At the outset, we observe that the ground set forth by the petitioner in his petition for certification to appeal is different than the claim that he advances in this appeal. As set forth previously in this opinion, in the petition for certification to appeal, the petitioner set forth as the ground for the appeal that "[t]he habeas . . . court erred in denying [his] ineffective assistance of counsel claim because trial counsel did not call a medical expert at trial." In this appeal, however, the petitioner challenges the denial of his petition for a writ of habeas corpus on the ground that the habeas court improperly construed count two of his amended petition. More specifically, in his appellate brief, the petitioner argues as follows: "The habeas court incorrectly read beyond the four corners of the petitioner's amended petition and inferred claims that were not included in the petition. More particularly, the habeas court read the petition to specify that it contained claims that prior habeas counsel, [Attorney] Mortimer, failed to plead and prove that trial counsel, [Attorney] Hauslaib, was ineffective for the various reasons as alleged in the complaint.

"This reading of the complaint by the habeas court was erroneous, and prejudiced the petitioner, because by adding claims to the complaint that were not actually pled, and that did not have any basis in the evidence presented at trial, the habeas court preempted the ability of the petitioner to file any type of future ineffective claim against current habeas counsel for her failure to properly plead the underlying complaint, thus violating the petitioner's due process right to bring a claim alleging [in]effective assistance of current habeas counsel."

The petitioner does not dispute that he failed to include this claim, which he couches in constitutional terms, in his petition for certification to appeal. Instead, the petitioner argues before this court that the habeas court abused its discretion in denying certification

because the unpreserved claim is not frivolous. The petitioner argues that the judgment of the habeas court dismissing his petition for a writ of habeas corpus must be reversed on its merits in light of the habeas court's flawed interpretation of count two. The respondent correctly observes that the habeas court was not asked to consider this issue when it considered the petition for certification to appeal. The respondent urges us to conclude that, even if the unpreserved claim had been included in the petition for certification to appeal, the habeas court would have properly exercised its discretion to deny the petition because the claim "is wholly frivolous and underserving of encouragement to proceed further." Setting aside the fact that the petitioner did not include the claim raised in this appeal in the petition for certification to appeal, he argues that he preserved the claim for appellate review "through the testimony and arguments that were presented during the habeas trial." Alternatively, the petitioner seeks review of this claim pursuant to the bypass doctrine articulated in *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015). In *Banks* v. *Commissioner of Correction*, 347 Conn. 335, 359–60, 297 A.3d 541 (2023), our Supreme Court concluded "that unpreserved claims challenging the habeas court's handling of the habeas proceeding are reviewable under the plain error doctrine and *Golding*, despite the petitioner's failure to include such claims in the petition for certification to appeal denied by the habeas court, if the petitioner can demonstrate, consistent with [the criteria set forth in *Simms* v. *Warden*, 230 Conn. 608, 618, 646 A.2d 126 (1994) (*Simms II*)], that the unpreserved claims involve issues that are debatable among jurists of reason, could be resolved in a different manner, or deserve encouragement to proceed further." In *Banks*, the court specified that a petitioner may fulfill

this burden in one of two ways: "First, the petitioner may strictly comply with the two part showing required by *Simms II* and expressly argue specific reasons why the habeas court abused its discretion in denying certification. Second, the petitioner may expressly allege that his [or her] argument on the merits demonstrates an abuse of discretion. . . . Although the burden is not onerous, requiring compliance with the *Simms II* criteria provides petitioners with the requisite incentive to include their unpreserved claims in the petition for certification to appeal whenever possible." (Citation omitted; internal quotation marks omitted.) *Banks* v. *Commissioner of Correction*, supra, 359.

For the reasons set forth in part II of this opinion, we conclude, on the basis of our review of the record and applicable legal principles, that the petitioner has failed to demonstrate that his underlying claim of error is debatable among jurists of reason, that a court could resolve the issues in a different manner, or that the question is adequate to deserve encouragement to proceed further. Accordingly, we conclude that the petitioner has failed to invoke this court's jurisdiction, and the appeal must be dismissed.

## II

We next address the petitioner's claim that the habeas court improperly construed the allegations in his amended petition for a writ of habeas corpus, resulting in a deprivation of his right to due process. We are not persuaded.

According to the petitioner, in his amended petition, he "failed to plead any counts alleging ineffective assistance of trial counsel or a claim of ineffective assistance of prior habeas counsel for failure to plead a claim against trial counsel due to deficient performance." The petitioner correctly states that, with respect to the claim concerning prior habeas counsel, Attorney Mortimer,

he alleged in his amended petition that Attorney Mortimer's representation was deficient in that he failed "to investigate and locate a trial witness who allegedly recanted her statements made to law enforcement about the petitioner's criminal conduct," failed "to consult and retain a medical expert to independently assess the victim's injuries," and failed "to question Dr. [Mantell] about whether the quality of Trooper [Trotter's] interview of the victim fell below the standard of care under recently promulgated guidelines for obtaining statements from children." When the habeas court addressed these counts, however, it noted: "Although the allegations [in count two] failed to specify the further necessary allegation that [prior] habeas counsel 'failed to plead and prove *that trial counsel*' was ineffective for the various reasons alleged, the court reads them in that fashion. It was also clear from the proceedings and closing arguments that the respondent also read the allegations in the same fashion, so [the petitioner] was not prejudiced in any way." (Emphasis in original.)

For the first time in this appeal, the petitioner claims that the habeas court's decision to interpret the allegations in count two in the manner previously noted was improper and deprived him of his right to due process. The petitioner argues that "[t]he four corners of the amended petition did not contain any allegations against criminal trial counsel, nor did it contain any allegations that prior habeas counsel failed to plead and prove that criminal trial counsel was deficient in any manner, nor did current habeas counsel present any witnesses or evidence at petitioner's habeas trial in support of any alleged ineffectiveness by criminal trial counsel." According to the petitioner, "any testimony as to any presumed deficiencies by criminal trial counsel . . . was for background information only, relative to the claims that prior habeas counsel put forth." The petitioner urges us to conclude that the alleged error amounted to a

due process deprivation in that the court "preemptively denied the petitioner his right to bring a habeas petition against current habeas counsel, since the court read beyond the four corners of the amended petition and sua sponte and arbitrarily decided claims not raised in that amended petition."

The petitioner asserts that the present claim was adequately preserved for appellate review "through the testimony and arguments that were presented during the habeas trial." The petitioner does not provide us with citations to the record that support this assertion. Our review of the record does not reflect that the present claim of constitutional error was distinctly raised before the habeas court and considered by that court. The claim, however, is reviewable under *Golding* because the record is adequate for review and the claim is of constitutional magnitude.[5] For the reasons that follow, we conclude that the alleged constitutional violation does not exist and, thus, the petitioner has failed to demonstrate that he was deprived of a fair trial.

Because the petitioner's due process claim is based on a claim that the habeas court improperly interpreted count two of his amended petition for a writ of habeas

[5] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original; footnote omitted.) *State* v. *Golding*, supra, 213 Conn. 239–40; see *In re Yasiel R.*, supra, 317 Conn. 781 (modifying third prong of *Golding*). "The first two [prongs of *Golding*] involve a determination of whether the claim is reviewable; the second two . . . involve a determination of whether the [party claiming error] may prevail." (Internal quotation marks omitted.) *In re Skye B.*, 230 Conn. App. 725, 737, 331 A.3d 769, cert. denied, 351 Conn. 922, 333 A.3d 105 (2025).

corpus, we first set forth the following relevant princi-
ples concerning the interpretation of pleadings. "It is
well settled that [t]he petition for a writ of habeas cor-
pus is essentially a pleading and, as such, it should
conform generally to a complaint in a civil action. . . .
The principle that a plaintiff may rely only upon what
he has alleged is basic. . . . It is fundamental in our
law that the right of a plaintiff to recover is limited to
the allegations of his complaint. . . . While the habeas
court has considerable discretion to frame a remedy
that is commensurate with the scope of the established
constitutional violations . . . it does not have the dis-
cretion to look beyond the pleadings and trial evidence
to decide claims not raised. . . . [A] habeas petitioner
is limited to the allegations in his petition, which are
intended to put the [respondent] on notice of the claims
made, to limit the issues to be decided, and to prevent
surprise." (Citation omitted; internal quotation marks
omitted.) *Ayuso* v. *Commissioner of Correction*, 215
Conn. App. 322, 382–83, 282 A.3d 983, cert. denied, 345
Conn. 967, 285 A.3d 736 (2022).

"[T]he interpretation of pleadings is always a question
of law for the court . . . . Our review of the [habeas]
court's interpretation of the pleadings therefore [also]
is plenary. . . . [T]he modern trend, which is followed
in Connecticut, is to construe pleadings broadly and
realistically, rather than narrowly and technically. . . .
[T]he [petition] must be read in its entirety in such a
way as to give effect to the pleading with reference to
the general theory upon which it proceeded, and do
substantial justice between the parties. . . . As long
as the pleadings provide sufficient notice of the facts
claimed and the issues to be tried and do not surprise
or prejudice the opposing party, we will not conclude
that the [petition] is insufficient to allow recovery."
(Emphasis omitted; internal quotation marks omitted.)
*Woods* v. *Commissioner of Correction*, 197 Conn. App.

597, 607, 232 A.3d 63 (2020), appeal dismissed, 341 Conn. 506, 267 A.3d 193 (2021). "[T]he [petition] must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties." (Internal quotation marks omitted.) *Newland* v. *Commissioner of Correction*, 322 Conn. 664, 678, 142 A.3d 1095 (2016).

Our analysis of whether the court improperly interpreted the allegations in count two is also guided by the principles governing claims of ineffective representation. It is well settled that "[t]o succeed on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy the two-pronged test articulated in *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). . . . In *Strickland* . . . the United States Supreme Court established that for a petitioner to prevail on a claim of ineffective assistance of counsel, he must show that counsel's assistance was so defective as to require reversal of [the] conviction . . . . That requires the petitioner to show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. . . .

"With respect to the prejudice component of the *Strickland* test, the petitioner must demonstrate that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. . . . It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceedings. . . . Rather, [t]he [petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . A reasonable probability is a probability sufficient to undermine confidence in the outcome." (Citations omitted; internal quotation marks omitted.) *Mukhtaar* v. *Commissioner*

*of Correction*, 158 Conn. App. 431, 437–38, 119 A.3d 607 (2015).

"In *Lozada* [v. *Warden*, 223 Conn. 834, 842–43, 613 A.2d 818 (1992)], our Supreme Court established that habeas corpus is an appropriate remedy for the ineffective assistance of appointed habeas counsel, authorizing what is commonly known as a habeas on a habeas, namely, a second petition for a writ of habeas corpus . . . challenging the performance of counsel in litigating an initial petition for a writ of habeas corpus . . . [that] had claimed ineffective assistance of counsel at the petitioner's underlying criminal trial or on direct appeal. . . . Nevertheless, the court in *Lozada* also emphasized that a petitioner asserting a habeas on a habeas faces the herculean task . . . of proving in accordance with *Strickland* . . . both (1) that his appointed habeas counsel was ineffective, and (2) that his trial counsel was ineffective. . . . Any new habeas trial would go to the heart of the underlying conviction to no lesser extent than if it were a challenge predicated on ineffective assistance of trial or appellate counsel. The second habeas petition is inextricably interwoven with the merits of the original judgment by challenging the very fabric of the conviction that led to the confinement." (Internal quotation marks omitted.) *Lebron* v. *Commissioner of Correction*, 204 Conn. App. 44, 50, 250 A.3d 44, cert. denied, 336 Conn. 948, 250 A.3d 695 (2021); see also *Santaniello* v. *Commissioner of Correction*, 230 Conn. App. 741, 749, 331 A.3d 739, cert. denied, 351 Conn. 926, 333 A.3d 1109 (2025).

As stated previously in this opinion, in count two of his amended petition, the petitioner alleged that he was denied his right to the effective assistance of prior habeas counsel in three distinct ways. Specifically, the petitioner alleged that, in his prior habeas action, Attorney Mortimer failed "to investigate and locate a trial witness who allegedly recanted her statements made

to law enforcement officials" concerning his criminal conduct, failed "to consult and retain a medical expert to independently assess the victim's injuries," and failed "to question Dr. [Mantell] about whether the quality of Trooper [Trotter's] interview of the victim fell below the standard of care under recently promulgated guidelines for obtaining statements from children. In count two, the petitioner alleged that, but for Attorney Mortimer's ineffective representation in the prior habeas action, there was a reasonable probability that the petition for a writ of habeas corpus in the prior habeas action would have been granted. In his prayer for relief in the present habeas action, the petitioner sought an order directing "the sentencing court to vacate the judgment" of conviction and "return the matter to the trial court docket."

The petitioner argues that it was improper for the court to have interpreted count two of his "ill pled petition . . . to include an additional count containing claims that alleged ineffective assistance of prior habeas counsel for failing to bring claims of ineffective assistance of counsel against criminal trial counsel, when no such claims were pled." This argument lacks merit. In light of the authority previously cited, the petitioner's claim of ineffective assistance of prior habeas counsel by its nature was factually and legally intertwined with the issue of whether he received effective assistance from his trial counsel. The petitioner could not prove prejudice in connection with prior habeas counsel's alleged deficient performance in the prior habeas action without proving that, in the absence of such deficient performance, the outcome of the prior habeas action would have been favorable to him. Stated otherwise, the prior habeas action was based on the petitioner's claim that he was deprived of his right to the effective assistance of counsel at his criminal trial. Thus, the *only* way that the petitioner could prove prejudice in connection with any deficient performance on

the part of Attorney Mortimer in the prior habeas action was by demonstrating that, but for such deficiencies, he would have prevailed in demonstrating that Attorney Hauslaib failed to provide competent representation at his criminal trial. The court in the present action correctly recognized this when it stated in its memorandum of decision that, in proving his claim of ineffective representation of prior habeas counsel, "the petitioner bears the task of proving the two *Strickland* factors against *both* habeas counsel *and* trial counsel in order to prevail." (Emphasis in original.) By interpreting the allegations in count two such "that [prior] habeas counsel 'failed to plead and prove that trial counsel' was ineffective"; (emphasis omitted); in the various ways alleged, the court did not alter the nature of count two. It correctly recognized that claims of ineffective assistance of prior habeas counsel must ultimately challenge the conviction itself.

Moreover, in connection with the present habeas action, the petitioner sought an order vacating his criminal conviction and a new trial. It belies logic for the petitioner to suggest that he was entitled to such relief in connection with his criminal conviction based solely on proof of Attorney Mortimer's alleged deficiencies. The petitioner bore the burden of proving that Attorney Mortimer's alleged deficiencies, if proven, prejudiced him because Attorney Mortimer failed to demonstrate that deficient performance *during the criminal trial* undermined the outcome of that proceeding. By interpreting the allegations in count two in the manner that it did, the court did nothing more than construe the allegations of the petition to the petitioner's benefit, in light of the petitioner's legal burden and the specific relief sought by him.[6]

---

[6] The petitioner argues that the court's interpretation of count two was contrary to the respondent's interpretation of count two at the time of the habeas trial. Specifically, the petitioner draws our attention to statements made by the respondent's counsel at the habeas trial that, in his view, reveal the respondent's belief that the petitioner was not pursuing a claim of

Finally, we observe that, even if the petitioner could demonstrate that the court erred in its interpretation of count two, and that his claim did not implicate Attorney Hauslaib's performance during the criminal trial, the petitioner failed to demonstrate that it resulted in the specific due process violation claimed in this appeal. As stated previously in this opinion, the petitioner claims that his right to due process was violated because the court's alleged misinterpretation of count two preemptively denied him his right to bring a habeas petition against current habeas counsel in the future. The petitioner does not cite to any relevant authority in support of this proposition, and we are unaware of any. Our Supreme Court has stated: "[T]he legislature has created a statutory entitlement to counsel in 'any habeas corpus proceeding arising from a criminal matter . . . .' General Statutes § 51-296 (a). This statutory right includes the right to ' "effective and competent" ' habeas counsel. *Lozada* v. *Warden*, [supra, 223 Conn. 838–39]. Connecticut takes that statutory right so seriously that habeas petitioners in this state are afforded the opportunity to challenge their convictions through successive petitions based on inadequate performance by habeas counsel. See, e.g., *Kaddah* v. *Commissioner of Correction*, 324 Conn. 548, 559, 153 A.3d 1233 (2017) ('a third habeas petition is available as a matter of fundamental fairness to vindicate the statutory right under § 51-296 (a) to competent counsel in litigating a second habeas petition')." *Cooke* v. *Williams*, 349 Conn. 451, 475–76, 316 A.3d 278 (2024).

---

ineffective assistance of trial counsel. The respondent argues that the habeas court's interpretation of the pleadings "neither surprised nor prejudiced the respondent in any way because the respondent read the pleadings to incorporate ineffective assistance of trial counsel into the petitioner's claim of ineffective assistance of first habeas counsel and litigated the case as such. . . . Simply put, the petitioner lacks standing to claim that the respondent was prejudiced by the manner in which the habeas court interpreted the pleadings in the petitioner's favor."

For the foregoing reasons, we are not persuaded that the petitioner has proven under *Golding* that the alleged constitutional violation exists and that it deprived him of his right to a fair trial.

The appeal is dismissed.

In this opinion the other judges concurred.